UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

LINDA CREEL, ET AL    CIVIL ACTION NO. 17-cv-0985

VERSUS    CHIEF JUDGE HICKS

JOHNNY L. JOHNSON, ET AL    MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Mike and Linda Creel, together with their 18-year-old son Caleb, were involved in a three-vehicle collision on I-49 north of Shreveport. Mike and Caleb were killed, and Linda was severely injured. Linda and her three adult daughters (Cristen, Candace, and Cammie) filed suit in state court against another driver and two insurers to seek damages arising from Linda's injuries and the deaths of Mike and Caleb.

The state court petition alleged that Candace Creel is "a resident of South Korea." The petition described the other plaintiffs as citizens of Louisiana or New York. Defendants are citizens of other states, but Candace's residence in South Korea posed a potential obstacle to removal based on diversity jurisdiction. A U.S. citizen who is domiciled in a foreign country is "stateless" and destroys diversity.

Defendants conducted some discovery regarding Candace's domicile and, more than seven months after they were served with the petition, removed the case based on diversity jurisdiction and the contention that Candace was still domiciled in Louisiana. Plaintiffs filed a Motion to Remand (Doc. 6) on the grounds that (1) the removal was

untimely and (2) Candace is domiciled in South Korea and destroys diversity. For the reasons that follow, it is recommended that the Motion to Remand be granted on the grounds that Candace was domiciled in South Korea by the time this action was filed and removed.

**Rules for Determining Domicile**

"An American national, living abroad, cannot sue or be sued in federal court under diversity jurisdiction, 28 U.S.C. § 1332, unless that party is a citizen, i.e. domiciled, in a particular state of the United States." Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996). If Candace is still domiciled in Louisiana, there is diversity and the removal is potentially valid (if timely). If, however, she changed her domicile to South Korea, there is no diversity and the case must be remanded.

"In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." Coury, 85 F.3d at 249. Plaintiffs filed their petition in state court in December 2016, and Defendants removed it in August 2017. Accordingly, it is Candace's domicile at those times that must be examined.

A person acquires a "domicile of origin" at birth, and that domicile is presumed to continue absent sufficient evidence of change. Acridge v. Evangelical Lutheran Good Samaritan Soc., 334 F.3d 444, 448 (5th Cir. 2003). "A change in domicile typically requires only the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely." Coury, 85 F.3d at 250. Some opinions suggest that the burden of persuasion is on the party attempting to show a change of domicile, but the

proper rule is that the ultimate burden on the issue of jurisdiction rests with the party who invokes federal jurisdiction.  Id. In this case, therefore, the burden in on the Defendants.

The court may look to a variety of factors to shed light on a party's intention to establish domicile.  The factors may include where the party exercises civil and political rights, pays taxes, owns property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for her family.  Acridge, 334 F.3d at 448, citing Coury, 85 F.3d at 251.  The court should weight all factors equally; no single factor is determinative. Id.

**Relevant Facts**[1]

Candace was born in 1989.  She grew up living with her parents in Pineville, Louisiana and earned a business degree from Louisiana College in 2012.  After graduation, she was living in Pineville and teaching swimming lessons when she met a Korean woman who told her that, as Candace recounted in her deposition, she could get a job teaching English in Korea "and it's a really fun job and a lot of people do it for like one year and you should try it out."

Candace testified that she researched the idea and decided that it would be a good opportunity for her to earn money to help pay off student loans and remove herself from a volatile situation with an ex-boyfriend.  Candace said that the pay was better than what she made in the United States, but the real advantage was a low cost of living because the school provided her housing.  She talked to her father and, "He was like, 'Yeah, I think it's

---

[1] The sources of the relevant facts are Candace's deposition, her answers to discovery, and a declaration she made under penalty of perjury pursuant to 28 USC § 1746.

a good thing for you to leave, you probably need to do that and clear your head for a year and then come back home,' because he thought it was a good chance or a good opportunity."

Candace moved to South Korea in 2013 on a temporary work visa. She originally taught English to kindergarten students, and she later worked for another school where she taught English in an immersion program. To work as a teacher, she received a teaching certification and registered with a national education board in South Korea.

Candace met Min Seop Kim, a South Korean citizen, after she moved to the country. They married in Korea in September 2015. They intended to have another wedding ceremony in America so that her family could attend, but the car accident happened in December 2015, and the second wedding was never held.

Min Seop was born in South Korea and has lived there most of his life. All of his family, including aging parents, live there. Min Seop has never lived in the United States and has visited only three times, including two two-week trips with Candace to Louisiana to visit her family. He is employed by a furniture company with its headquarters in South Korea. His job is in sales, which requires good communication skills, but he is not sufficiently fluent in English to function in a professional environment in America. Candace states in her declaration that they are both very satisfied with his job, which he has no intention of leaving, and he earns a comfortable living that has allowed her to stop working and focus on improving her Korean language skills. She and her husband live in a home that they both own.

Candace was asked at her deposition in July 2017 if it was her "intention to take on citizenship there in South Korea?" She answered no, but she stated under oath in a declaration signed in August 2017 that she has "begun the process of becoming a naturalized citizen of South Korea." After she was married, she changed her temporary work visa to a spousal visa, which allows additional benefits including better employment opportunities. She renewed the spousal visa in 2017 for another five years. She states that she would like to become more fluent in Korean so that she could obtain more permanent employment as a teacher in a Korean school, and it is their plan to raise the children they hope to have in South Korea "for the indefinite future" with Korean as their first language.

Candace's intent about staying in Korea was discussed at her deposition. The following two passages are the most illustrative:

> Q. Was your plan when you moved to stay there for permanent -- permanently?
>
> A. Not really, no, it wasn't my plan, wasn't my intention.
>
> Q. When you got married, was it?
>
> A. After I got married I decided that I would stay there as long as we could. It's not permanent. I don't know if it's permanent. It's more like, we'll see.
>
> Q. Is that where you are now, you're still undecided?
>
> A. Yeah, undecided.
>
> Q. Does your husband know he's still on the undecided list?
>
> A. Yeah, he does. No, he knows - - not that he's undecided, he would come with me if I went back to America. He's decided; the country is not.

********

> Q. Had you and your dad had any conversations about whether or not you were going to stay in Korea permanently following your wedding?
>
> A. Well, no, actually. It was more like this: If I would call home, he'd be like, "When are you going to come home?" I'd be like, "I don't know. I'm trying, but I'm not sure when it's going to happen." So it was always a maybe - - it was always borderline between me going back home and me staying in Korea.
>
> Q. And how did your dad handle that?
>
> A. Well, like every dad. "When are you going to come home? Aren't you going to move back? If you move back I have a job for you, I have a place for you, "blah, blah, blah, you can come and do this, I found a job for your husband, come home, come home, come home."
>
> Q. And up to the time of his death, you hadn't decided whether you were going to stay permanently in Korea or not?
>
> A. Well, even now I'm not decided, so.

Candace also spoke to her intent in her declaration. She said she has always remained open to the possibility of someday returning to the United States because that was the hope of her parents, but "at this time I do not know whether I will remain in South Korea for the rest of my life." She said she is open to the possibility that she and her husband could move to the United States "at some point in the future," but if that were to happen it would be "in the distant future." Their intent is to remain in South Korea indefinitely. If they were to move to the United States, they would likely choose a city with a significant Korean-language population, which makes it unlikely that they would reside in Louisiana even if they moved to the United States.

Candace has a Louisiana driver's license that she renewed in 2015 when she visited her family in Louisiana. She said her intent was to use it to get an international driver's license, but she elected not to because she was not comfortable driving in South Korea, and there is an extensive subway system in the city where she lives. She has no residence outside of South Korea and uses her mailing address there for all purposes. She has a South Korean bank account with her husband that is used for virtually all purposes. She does have one bank account in the United States that she uses solely to repay student loans. She maintains that account because it is required by the lenders, and she intends to close the account after the loans are paid.

Candace makes payments into the South Korean retirement pension system, which she says is similar to the U.S. social security system. She receives healthcare through the South Korean system, with health insurance provided by her husband's employer. She files a U.S. federal tax return each year because she is required to, but she does not pay federal income taxes. She does not file a Louisiana tax return or pay any taxes of any kind to Louisiana. She is still registered to vote in Pineville but has not voted in any U.S. election since moving to South Korea.

Cristen Creel, Candace's sister who lives in New York, was asked about Candace's move. Cristen testified in her deposition that the family had been concerned about Candace moving to Korea, "but at the same time, it was a temporary move, just for experience, and the contact wasn't completely lost." She said they communicated regularly "but then she met a boy there, so -- she met her husband." Defense counsel asked if Candace "started

living permanently because of the boy." Cristen said that was "why she's been there longer."

Cristen also said that Candace and her husband "actually have always been planning to come back." She said the husband was not as close to his family, and he "really loved it here" when they visited America, so "the plan was for them to eventually be able to come back, but he had to work his stuff to come." She said she did not know where they would live if they moved to America. "They didn't know where exactly because there has to be something that he can do."

**Analysis**

The relevant factors in assessing whether Candace changed her domicile (1) are residence in South Korea location and (2) an intention to remain there indefinitely. "There is no durational residency requirement in the establishment of domicile; once presence in the new state and intent to remain are met, the new domicile is instantaneously established." Acridge, 334 F.3d at 448. Candace has been present in Korea since 2013, and she has testified that she intends to live there with her husband indefinitely. She has no home, apartment, or other property in Louisiana, though she does maintain some connections such as a bank account and a driver's license.

Her wedding was in September 2015, and the state court suit was not filed until more than a year later in December 2016. Removal did not occur until several more months later in August 2017. By then, Candace had been married for almost two years and had made her home in South Korea. The facts show that she did not move to Korea with the intention to stay there indefinitely, but she developed that intent after she arrived and was

married. The moment that happened, she became domiciled in South Korea for purposes of diversity jurisdiction.

Defendants note that Candace did not say she had decided to live in South Korea permanently, "[b]ut a litigant is not required to state—or even have—an intention to stay permanently at the new residence" to change her domicile. 13E Wright & Miller, Federal Practice and Procedure Juris. § 3613 (3d ed.). "It is sufficient if the individual intends to remain at the new home for an indefinite period into the future." Id.; Jarman v. Hancock, 1995 WL 1947415, *3 (N.D. Miss. 1995) (citing treatise).

Defendants argue that some of Candace's declaration statements, such as whether she intended to seek South Korean citizenship, conflict with her deposition testimony. "A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." Coury, 85 F.3d at 251. There was some potential conflict between the deposition and later declaration testimony, but there are no objective facts that indicate Candace has not developed an intention to remain in South Korea indefinitely. To the extent reasonable minds could differ, it must be kept in mind that the ultimate burden rests with Defendants as the parties invoking federal jurisdiction. They have not pointed to sufficient evidence to overcome Candace's fairly compelling evidence that she is now domiciled in South Korea.

Defendants cite two decisions that they believe suggest a different outcome. In Mas v. Perry, 489 F.2d 1396 (5th Cir. 1974), a Mississippi woman who was a graduate assistant at LSU got married to a French graduate assistant, and the couple continued to work as graduate assistants at LSU for about two years. They discovered that their landlord had

been spying on their bedroom and bathroom by using two-way mirrors, and they filed suit against the Louisiana landlord in federal court based on diversity jurisdiction.

Mr. Mas was a citizen of France, so there was diversity unless Mrs. Mas had lost her Mississippi domicile and become domiciled in Louisiana. The Fifth Circuit held that her Mississippi domicile had not been disturbed by her year in Louisiana before her marriage or the time she and her husband spent at LSU after their marriage because "for both periods she was a graduate assistant at LSU." She testified that she had no intention of returning to her parents' home in Mississippi after she married, but the court held that the time she spent with her husband in Louisiana "only as students" did not show the requisite intention to remain in Louisiana indefinitely.

The facts in this case are different. By the time this suit was filed and removed, Candace was no longer on a one-year teaching adventure but had married and made a home in South Korea. She was not merely present in Korea as a student or on a temporary work assignment, which are recognized exceptions to forming a new domicile.

Defendants also point to Coury v. Prot, which involved a determination of whether Mr. Prot was a citizen of Texas or France. The Fifth Circuit found no clear error in a district court's determination that Prot was domiciled in Texas when the case was filed and removed. That case included distinct facts, such as an affidavit from Prot in which he stated that he never intended to live permanently in France or abandon his Texas home, and that his intention was always to return to Texas. The evidence also showed that he commuted regularly between Texas and France for business, and his wife lived full time in their Texas home until she moved temporarily to France, where neither of them ever

established a permanent residence. There were also Mr. Prot's repeated statements that he and his wife did not intend to stay in France indefinitely and that they always intended to return to Texas. The legal principles discussed in <u>Coury</u> are certainly applicable and helpful, but its facts are too distinct for it to compel an outcome in this case.

**Conclusion**

"If at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Candace's domicile in South Korea destroys the potential for diversity jurisdiction and requires that this case be remanded for lack of subject-matter jurisdiction. It is, therefore, not necessary to address Plaintiffs' alternative argument that the removal was untimely.

Accordingly;

**IT IS RECOMMENDED** that Plaintiffs' **Motion to Remand (Doc. 6)** be **granted** and that this case be **remanded** to the First Judicial District Court, Caddo Parish, where it was pending as Suit No. 597,273-C.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of March, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge